LEHIGH VALLEY R. CO. v. MEEKER (two cases).

(Circuit Court of Appeals, Third Circuit. August 27, 1913. On Rehearing, February 19, 1914.)

Nos. 1720, 1721.

1. COMMERCE (§ 91*)—INTERSTATE COMMERCE ACT—ACTION FOR DAMAGES FOR VIOLATION.

Interstate Commerce Act (Act Feb. 4, 1887, c. 104, §§ 14, 16, 24 Stat. 384 [U. S. Comp. St. 1901, pp. 3164, 3165]), as amended by Act June 29, 1906, c. 3591, §§ 3, 5, 34 Stat. 589, 590 (U. S. Comp. St. Supp. 1911, pp. 1297, 1301), make a clear distinction between a suit brought to enforce an administrative order made by the Interstate Commerce Commission, which is in equity, the only question in issue being the lawfulness of the order, and an action brought to recover damages for which reparation has been awarded by the Commission. The latter is not a suit to enforce the order, nor based thereon, but is an independent plenary action at law, triable to a jury, and to proceed "like all other civil suits for damages," except that the findings and order of the Commission are receivable as prima facie evidence of the facts therein stated, the Commission being required by section 14, on making an order awarding damages, but not otherwise, to make and report the findings of fact on which the award is made.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 143; Dec. Dig. § 91.*]

2. COMMERCE (§ 95*)—INTERSTATE COMMERCE ACT—ACTION FOR DAMAGES FOR VIOLATION—EVIDENCE.

A finding by the Interstate Commerce Commission as to the reasonableness or otherwise of a rate charged by a carrier in interstate commerce is an administrative function, properly and constitutionally delegated by the legislative power to the Commission, and is, if lawfully made, conclusive.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 145; Dec. Dig. § 95.*]

3. COMMERCE (§ 95*)—INTERSTATE COMMERCE ACT—ACTION FOR DAMAGES FOR VIOLATION—EVIDENCE.

A finding by the Interstate Commerce Commission, on the hearing of a petition for reparation, that a given rate charged the complainant is unreasonable, while pertinent to the issue in a subsequent suit by such complainant to recover damages, in that it establishes a violation of the act, is not decisive of the question of liability for damages under Act Feb. 4, 1887, c. 104, § 8, 24 Stat. 382 (U. S. Comp. St. 1901, p. 3159), either prima facie or otherwise, but its evidential value on that issue is for the determination of the court and jury.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 145; Dec. Dig. § 95.*]

4. COMMERCE (§ 97*)—INTERSTATE COMMERCE ACT—ACTION FOR DAMAGES FOR VIOLATION—INSTRUCTIONS.

On the trial of such an action for damages, in which plaintiff has been permitted to introduce the report of the Commission, it is the duty of the court to instruct the jury as to what are and what are not findings of fact therein which are made prima facie evidence by the statute.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 147; Dec. Dig. § 97.*]

5. COMMERCE (§ 95*)—INTERSTATE COMMERCE ACT—ACTION FOR DAMAGES FOR VIOLATION.

In such an action, a finding made by the Commission that plaintiff was charged an unreasonable rate as a shipper by defendant, and an order of the Commission awarding plaintiff damages in a sum representing the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

211 F.—50

difference between the amounts paid by him under such rate and what he would have paid under a rate found to be reasonable do not constitute evidence making a prima facie case, since others than plaintiff as the shipper may have sustained the actual pecuniary loss from the overcharge, and the statute authorizes the recovery only of actual damages sustained by the plaintiff, and not of a penalty. The statute although making the findings of fact of the Commission prima facie evidence of the facts found, does not make such facts prima facie evidence of anything; but their pertinency and evidential weight and value are for the determination of the court and jury as in other civil cases.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 145; Dec. Dig. § 95.*]

6. COMMERCE (§ 87*)— INTERSTATE COMMERCE COMMISSION — JURISDICTION — CLAIMS FOR DAMAGES—LIMITATION.

The provision of Interstate Commerce Act (Act Feb. 4, 1887, c. 104, § 16, 24 Stat. 384 [U. S. Comp. St. 1901, p. 3165]), as amended by Act June 29, 1906, c. 3591, § 5, 34 Stat. 590 (U. S. Comp. St. Supp. 1911, p. 1301), that "all complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after, * * * provided, that claims accrued prior to the passage of this act may be presented within one year," does not by the proviso permit the filing within one year of claims accrued prior to the passage of the amendatory act without limitation, but the proviso applies only to claims accrued not more than two years prior to its passage.

[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 139; Dec. Dig. § 87.*]

In Error to the District Court of the United States for the Eastern District of Pennsylvania; James B. Holland, Judge.

Actions at law by Henry E. Meeker, surviving partner of the firm of Henry E. Meeker and Caroline H. Meeker, doing business under the trade-name of Meeker & Co., and by Henry E. Meeker, against the Lehigh Valley Railroad Company. Judgment for plaintiff in each case, and defendant brings error. Reversed.

See, also, 175 Fed. 320.

George W. Field, of New York City, John G. Johnson, of Philadelphia, Pa., and Edgar H. Boles, of New York City (Frank H. Platt, of New York City, Everett Warren, of Scranton, Pa., and Geo. W. Field, of New York City, of counsel), for plaintiff in error.

William A. Glasgow, Jr., of Philadelphia, Pa., and John A. Garver, of New York City, for defendant in error.

Before GRAY, BUFFINGTON, and McPHERSON, Circuit Judges.

GRAY, Circuit Judge. On September 3, 1912, Henry E. Meeker, surviving partner of the firm of Meeker & Co., defendant in error (hereinafter called the plaintiff), instituted in the court below, under the provisions of section 16 of the Act to Regulate Commerce, a suit against the Lehigh Valley Railroad Company, plaintiff in error (hereinafter called the defendant), to recover damages alleged to have been incurred by reason of certain acts and practices of the defendant, in violation of said act, and theretofore the subject of complaint by the said plaintiff before the Interstate Commerce Commission.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

To the judgment obtained by the plaintiff against the defendant, this writ of error has been sued out by the latter.

In his petition in the court below, "setting forth briefly the causes for which he claims damages," plaintiff charges that the defendant company, as a common carrier, subject to the provisions of the Interstate Commerce Act, from November 1, 1900, to August 1, 1901, discriminated against his firm, in that it demanded and received from Meeker & Co. greater compensation for services rendered in the transportation of anthracite coal, from the Wyoming region in Pennsylvania, to Perth Amboy, in New Jersey, than it demanded or received from another shipper for "a like and contemporaneous service in the transportation" of anthracite coal between the same points, in violation of section 2 of the Act to Regulate Commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3155]); and further charges that from August 1, 1901, to July 17, 1907, the defendant company demanded and received from plaintiff's firm unjust and unreasonable rates for the transportation of anthracite coal from the Wyoming region in Pennsylvania to Perth Amboy, New Jersey, in violation of said act.

In support of this charge, it is alleged in the petition, as follows: That defendant is a common carrier engaged in interstate railroad transportation between points in the states of Pennsylvania, New Jersey and New York, and is largely engaged in transporting anthracite coal for plaintiff and other shippers over its lines, from collieries in the Wyoming coal region of Pennsylvania, to Perth Amboy, in the state of New Jersey; that one of said shippers other than plaintiff is the Lehigh Valley Coal Company, a corporation of the state of Pennsylvania, engaged in the business of mining and buying anthracite coal in said Wyoming region.

Plaintiff alleges that from November 1, 1900, to August 1, 1901, the defendant company, intending to unjustly and unreasonably discriminate in favor of, and to prefer, the Lehigh Valley Coal Company to the plaintiff and other independent shippers, unlawfully charged the plaintiff with excessive and discriminatory rates on 55,257.75 tons of anthracite coal of prepared sizes, 16,689 tons of pea coal, 11,448.93 tons of buckwheat coal, and 4,926.77 tons of rice coal, shipped between the said Wyoming coal region and Perth Amboy, New Jersey, the total charges on such coal amounting to $129,989.18, whereas, had the plaintiff been given the benefit of the rates charged by defendant for similar shipments of the said Lehigh Valley Coal Company, the total charge upon plaintiff's said shipments would have been $11,909.33 less than the sum exacted as above during the period aforesaid, which sum, with interest thereon from August 1, 1901, was awarded by the Interstate Commerce Commission in favor of the plaintiff, in their supplemental report dated May 7, 1912, as also in their orders supplemental thereto, issued June 8 and 15, 1912, attached to said petition and marked Exhibits "A" and "B," respectively.

Plaintiff further alleges that from August 1, 1901, to July 1, 1907, the defendant charged and exacted from petitioner, over its said line

of road from the Wyoming coal region, aforesaid, to Perth Amboy, at tidewater in New Jersey, the following unreasonable and excessive charges upon all shipments of anthracite coal, to wit: $1.55 per ton for prepared coal, $1.40 per ton for pea coal, $1.25 per ton for buckwheat coal, and $1.10 per ton for coal smaller than buckwheat coal. That from August 1, 1901, to July 1, 1907, these shipments amounted to 248,870.15 tons of prepared sizes of such coal, 106,051.09 tons of the pea size of such coal, 87,250 tons of the buckwheat size of such coal, and that the charges paid thereon amounted to $685,375.27, at rates exceeding $1.40 per gross ton in prepared sizes, $1.30 on pea coal, and $1.15 on buckwheat coal, the rates fixed by the Interstate Commerce Commission as proper and reasonable, the amount of such excess being $58,236.45, paid by plaintiff to the defendant. That said payments were made under protest that the same were unreasonable and excessive.

The petition then recites that on July 17, 1907, plaintiff filed with the Interstate Commerce Commission a complaint, setting forth the aforesaid unreasonable and discriminatory practices and charges of defendant, to the prejudice of the plaintiff and in violation of the Act to Regulate Commerce, and praying for a hearing upon the allegations set forth in said complaint, and that the Commission make an order, requiring the defendant to cease and desist from the practices aforesaid, and fixing the proper and reasonable rate for transportation of anthracite coal over defendant's line, from the Wyoming region to tidewater at Perth Amboy, and awarding complainants reparation in damages in such amount as they might have suffered loss by reason of said improper practices and charges. Defendant, being duly served with a copy of said complaint, made answer thereto, issue was joined, and the complaint regularly heard and argued by all the parties thereto, and submitted. A report was duly filed by the said Commission on June 8, 1911, in Docket No. 1180, a copy of which report, with the conclusions and orders of the Commission, is attached to plaintiff's petition as "Exhibit C."

By this report, the Interstate Commerce Commission held that the charges by the defendant company to the plaintiff, between November 1, 1900, and August 1, 1901, were discriminatory, and therefore unlawful, and also that the charges of defendant company, between August 1, 1901, and July 1, 1907, were unreasonable, and the same were ordered to be discontinued, and that reasonable and proper charges for the transportation of anthracite coal over defendant's line between the points of origin and destination aforesaid, should thereafter be $1.40 per gross ton on prepared sizes, instead of $1.55, the rate charged, and $1.30 on pea coal, instead of $1.40, the rate charged, and $1.15 on buckwheat coal instead of $1.20, the rate charged, and the Commission held "that reparation should be awarded upon the basis of the rates herein found to be reasonable, upon all shipments of coal by complainants from the Wyoming region to Perth Amboy, since August 1, 1901. The amount of reparation which should be awarded under our finding in this case cannot be ascertained from the exhibits now on file, and such further proceeding will be had as may be necessary to determine the amount of money due to complainants."

Plaintiff's petition further recites that a hearing was had upon the question of reparation, and that a supplemental report was filed by said Commission, May 7, 1912. In this report, attached to the petition and marked "Exhibit A," the Commission state

"that the original report in No. 1180 disposed of all the questions at issue, except the claim for reparation, and the case was held open for the purpose of securing further information regarding that feature. A further hearing has been held, and complainant has presented exhibits, showing the total number of tons of each variety of coal shipped and the amount of reparation due on such shipments. These exhibits have been examined by defendant and admitted to be correct."

They then refer to their finding in the original report, that the rates exacted by defendant from November 1, 1900, to August 1, 1901, were unjustly discriminatory and in violation of section 2 of the act, to the extent that they exceeded the rates contemporaneously charged the Lehigh Valley Coal Company under the contract then, in effect between that company and the defendant, and to the further finding in said original report, that the rates in effect from August 1, 1901, to July 17, 1907, were unreasonable, to the extent that they exceeded rates of $1.40 per gross ton on prepared sizes, $1.30 on pea, and $1.15 on buckwheat.

They then proceed to say that on the basis of their conclusions in the former report, and upon consideration of the evidence adduced at the hearing upon the question of reparation, they now find that, during the period from November 1, 1900, to August 1, 1901, in regard to the charges exacted from plaintiff and found to have been unjustly discriminatory, that complainant was entitled to an award of reparation in the sum of $11,009.33, with interest thereon from August 1, 1901. And they further find, in regard to the rates exacted for coal shipped by plaintiff from August 1, 1901, to July 7, 1907, which were found unreasonable in the original report, that plaintiff is

"entitled to an additional award of reparation in the sum of $58,236.45, with interest, amounting to $27,750.64, on the individual charges comprising said sum, from the dates of payment thereof to September 1, 1911, together with interest on said sum of $58,236.45, from September 1, 1911."

Following said supplemental report, and on the same day, to wit, May 7, 1912, a so-called supplemental order was entered, which, as amended in an unimportant particular May 15, 1912, read as follows:

"This case being at issue upon complaint and answers on file, and having been duly heard and submitted by the parties, and full investigation of the matters and things involved having been had, and the Commission having, on the date hereof, made and filed a supplemental report containing its findings of fact and conclusions thereon, which said report is hereby referred to and made a part hereof:

"It is ordered, that defendant Lehigh Valley Railroad Company be, and it is hereby authorized and required to pay unto complainant, Henry E. Meeker, surviving partner of Henry E. Meeker and Caroline H. Meeker, copartners, trading as Meeker & Company, on or before the 15th day of July, 1912, the sum of $11,009.33, with interest thereon at the rate of 6 per cent. per annum from the 1st day of August, 1901, as reparation for unjustly discriminatory rates charged for the transportation of anthracite coal from the Wyoming coal region, in Pennsylvania, to Perth Amboy, New Jersey, which rates so charged have been found by this Commission to have been unjustly discrimina-

tory, as more fully and at large appears in and by said report of the Commission.

"It is further ordered, that defendant Lehigh Valley Railroad Company be, and it is hereby authorized and required to pay unto complainant, Henry E. Meeker, surviving partner of Henry E. Meeker and Caroline H. Meeker, copartners, trading as Meeker & Company, on or before the 15th day of July, 1913, the sum of $58,236.45, with interest thereon at the rate of 6 per cent. per annum, amounting to $27,750.64, upon the various individual charges comprising said sum, from the dates of payment thereof to September 1, 1911, as itemized in complainant's Exhibit 2, together with interest at the rate of 6 per cent. per annum on said sum of $58,236.45 from September 1, 1911, as reparation for unreasonable rates charged for the transportation of various shipments of anthracite coal from the Wyoming coal region in Pennsylvania, to Perth Amboy, New Jersey, which rates so charged have been found by this Commission to have been unreasonable, as more fully and at large appears in and by said report of the Commission."

The petition then avers that a true copy of this order of the Commission was duly served upon the defendant, and demand made for payment of the sum claimed in the petition, and as set forth in the aforesaid orders of the Commission and attached to the petition as Exhibits "A" and "B," but the defendant had failed and refused to pay the said sums, or any part thereof. "Wherefore," it is alleged, "petitioner has instituted this proceeding to enforce the aforesaid order, regularly and lawfully made under the Act to Regulate Commerce." (The theory of the petition thus appears to be that this is a proceeding to enforce the order of reparation made by the Commission, and not a suit for the recovery of such damages as plaintiff has actually incurred by reason of the alleged unlawful acts of defendant, as found by the Commission.) The court is then prayed to enter a rule upon said defendant to file a plea, answer, or demurrer to the petition within thirty days from the date of serving a copy of the same, and to fix a time and place for the trial of the cause under the provisions of the Act to Regulate Commerce.

The defendant accordingly filed, October 5, 1912, its plea of the general issue, the bar of the statutes of limitation applicable to plaintiff's claim, and for a further plea averred that the Interstate Commerce Commission had no jurisdiction to make the findings and order of reparation which the plaintiff seeks to enforce, and that there was before the Commission no substantial evidence to sustain its findings and order.

At the trial, the plaintiff put in evidence the report of the Commission, dated June 8, 1911 (see Record, pp. 22–73), and the order thereon of the same date, requiring the defendant to abstain from charging or receiving its present rates for the transportation of coal so found to be unreasonable, and requiring defendant for a period of two years thereafter to maintain the rates found in said report to be reasonable. Also, the supplemental report of the Commission, dated May 7, 1912, finding the reparation or damages to which the plaintiff was entitled, and the supplemental order of that date, amended by that of June 15th, as hereinbefore set out, requiring the defendant to pay to plaintiff, on or before the 1st day of August, 1912, the sums found due as and for reparation in said supplemental report.

Save the testimony of the plaintiff (Meeker), bearing upon the

charge of discrimination as to freight rates between November 1, 1900 and August 1, 1901, no evidence, other than these four papers, was offered by plaintiff at the trial. The defendant offered no testimony, except that of Mr. George W. Field, one of its counsel, who attended the hearing before the Interstate Commerce Commission and made certain calculations from Exhibits "A" and "B," offered in evidence by defendant, dividing up the shipments therein set out between different dates, to which the different statutes of limitation might apply. Plaintiff's contention was, and is, that these four papers, in the absence of any evidence on the part of the defendant, made out a prima facie case in his favor and entitled him to a recovery, as damages, of the amounts awarded by the Commission.

This was the view taken by the learned judge of the court below, in submitting the case to the jury, and a verdict was accordingly rendered in favor of the plaintiff for the aggregate sums awarded by the Commission, as reparation, which, with interest thereon, amounted to $109,280.17. To the judgment thereon, this writ of error is sued out by the defendant. Certain of the assignments challenge the constitutionality of section 16 of the Act to Regulate Commerce, on the ground that its provision, that the findings and order of the Commission shall be prima facie evidence of the facts therein stated, is unconstitutional, in that it confers judicial power upon an administrative commission, deprives the defendant of its property without due process of law, and denies to it its right of trial by jury; and also, on the ground that the provision of said section, conferring upon the Commission authority to determine and award damages to any party complaining of the violation of the act by a common carrier and to direct such carrier to pay to the complainant before a day named the sum so awarded, and declaring that, on a trial of a suit to recover such damages, the facts stated in the findings and order of the Commission shall be prima facie evidence of the facts therein stated, is not a proper exercise of the powers given to Congress to regulate commerce. The latter point was raised before this court in the case of Western New York & P. R. R. Co. v. Penn Refining Co., 137 Fed. 343, 70 C. C. A. 23. We there said:

"The constitutionality of the provisions making 'findings of fact' prima facie evidence before a jury has been challenged by sundry assignments of error, but is, we think, beyond reasonable question. The constitutional guaranty relative to trial by jury in the courts of the United States does not exclude legislative authority to effect convenient changes in the rules of evidence, involving no detriment to litigants."

In view of this decision, counsel for the plaintiff in error does not attempt a reargument of the question before this court. The question as to the other grounds of constitutionality, is disposed of by the view taken as to what may be the proper interpretation and application of the provisions of the statute. The questions raised by the assignments of error which are most material, relate to the submission of the reports and orders of the Interstate Commerce Commission, and to how far and in what respect the same are to be taken

as prima facie evidence of facts stated by them. Also, the question whether the facts of which such reports and orders are the prima facie evidence, are sufficient, in the absence of countervailing testimony by the defendant, to maintain the plaintiff's suit and claim for damages.

[1] This court has already, in a decision at this term, in the case of Lehigh Valley Railroad Co. et al. v. J. Mitchell Clark et al., 207 Fed. 717, 125 C. C. A. 235, discussed at some length the history of the legislation embodied in the Act to Regulate Commerce, and its amendments. As we there pointed out, section 14 of the original act made it the duty of the Commission to make a report in writing, which should include the findings of fact upon which the conclusions of the Commission are based, together with its recommendation as to what reparation should be made to the parties found to have been injured, "and such findings so made shall thereafter, in all judicial proceedings, be deemed prima facie evidence as to each and every fact found."

Section 16 provided for the refusal or neglect "to obey any lawful order or requirement of the Commission," by authorizing the Commission and the party interested in such order or requirement, to apply in a summary way to a Circuit Court of the United States sitting in equity, and empower such court, as a court of equity, to hear and determine the matter, etc. "And on such hearing, the report of said Commission shall be prima facie evidence of the matters therein stated." And it was provided that if it be made to appear to the court "that the lawful order or requirement of said Commission drawn in question has been violated or disobeyed," the court may issue "a writ of injunction or other proper process, mandatory or otherwise, to restrain such common carrier from further * * * violation or disobedience of such order."

From the fact that it was to a court of equity alone that resort was to be had for the enforcement of an order of the Commission, it was apparent that it was only to such ministerial orders of the Commission as could be enforced by a court of equity, that the act in this respect could apply, and that a recommendation or an award of damages by the Commission was not such an order or requirement as could be thus enforced without a violation of the seventh amendment to the Constitution, in regard to jury trials. This consideration suggested the Act of March 2, 1889 (25 Stat. 859, c. 382, § 5), amending section 16 of the original act by adding thereto the following:

"If the matters involved in any such order or requirement of said Commission are founded upon a controversy requiring a trial by jury, as provided by the seventh amendment to the Constitution of the United States, and any such common carrier shall violate or refuse or neglect to obey or perform the same, after notice, * * * it shall be lawful for any company or person interested * * * to apply in a summary way, by petition, to the Circuit Court of the United States sitting as a court of law, * * * alleging such violation or disobedience as the case may be."

Then, after providing for a jury trial, the amendment concludes:

"At the trial, the findings of fact of said Commission, as set forth in its report, shall be prima facie evidence of the matters therein stated."

The distinction thus clearly made between reparation and non-reparation cases, is made still more clear in the so-called "Hepburn Act" of 1906, in which section 14 was amended so as to read, as follows:

"That whenever an investigation shall be made by said Commission, it shall be its duty to make a report in writing in respect thereto, which shall state the conclusions of the 'Commission, together with its decision, order, or requirement in the premises; and in case damages are awarded, such report shall include the findings of fact on which the award is made."

This distinction was still further emphasized by so amending section 16 as to provide that, where, after hearing on a complaint, the Commission should determine that complainant is entitled to an award of damages, it

"shall make an order directing the carrier to pay to the complainant the sum to which he is entitled on or before the day named. If a carrier does not comply with an order for the payment of money within the time limit in such order, the complainant * * * may file in the Circuit Court of the United States for the district in which he resides, * * * a petition setting forth briefly the causes for which he claims damages, and the order of the Commission in the premises. Such suit shall proceed in all respects like other civil suits for damages, except that on the trial of such suit the findings and order of the Commission shall be prima facie evidence of the facts therein stated."

After other provisions, the section, as amended, further provides (the italics being ours):

"If any carrier fails or neglects to obey any order of the Commission, *other than for the payment of money*, and while the same is in effect, any party injured thereby, or the Commission in its own name, may apply to the Circuit Court in the district where such carrier has its principal operating office, * * * for an enforcement of such order. Such application shall be by petition, which shall state the substance of the order and the respect in which the carrier has failed of obedience, and shall be served upon the carrier in such manner as the court may direct, and the court shall prosecute such inquiries and make such investigations, through such means as it shall deem needful in the ascertainment of the facts at issue or which may arise upon the hearing of such petition. If, upon such hearing as the court may determine to be necessary, it appears that the order was regularly made and duly served, and that the carrier is in disobedience of the same, the court shall enforce obedience to such order by a writ of injunction, or other proper process, mandatory or otherwise."

Thus, the inherent and obvious distinction between reparation and non-reparation cases is clearly recognized by Congress. It could hardly be otherwise than that such recognition should be made. The great purposes of the act are largely accomplished by the administrative control given to the Commerce Commission over all carriers, as to interstate commerce, and that administrative control is made efficient by the peculiar jurisdiction of a court of equity, to which the Commission or a party interested may apply for the enforcement of its orders. In such cases, the whole record of the investigation by the Commission is before the court, and the only matter to be determined is that the order made by the Commission is a lawful order; that is, made within the scope of the authority conferred by Congress, and upon a full hearing of the parties, with the opportunity accorded of

adducing testimony and having it considered. I. C. C. et al. v. Louisville & Nashville R. R. Co., 227 U. S. 88, 33 Sup. Ct. 185, 57 L. Ed. ——, lately decided by the Supreme Court of the United States.

When we come, however, to a reparation case, we encounter at once, not the question of making efficient the orders of the Commission as an administrative body, and of enforcing its proper control over interstate commerce, but the right of an individual plaintiff to recover compensation from the defendant for damages alleged to have been actually incurred by reason of such defendant's unlawful conduct. We are dealing, not with governmental control over those engaged in a quasi public employment, but with a personal controversy, which, under our traditional institutions and constitutional system, can only be determined, as other personal controversies of the kind are determined, by a jury trial at common law.

The right to a jury trial having thus been preserved by the provisions of the act above referred to, under them "the parties are entilted," as said by us in Western New York & P. R. R. Co. v. Penn Refining Co., supra,

"to an impartial trial by jury, so conducted as to accord to them in full measure the enjoyment of their constitutional right. The procedure contemplated by the act and, unless waived, required by the Constitution, is jury trial, accompanied with the usual safeguards furnished by a proper application of the principles of evidence and the proper submission of the case to the jury."

This right of trial by jury is not granted, as of grace, by the act, but is a constitutional right of which the defendant cannot be deprived. The consistency and harmony of the reparation proceedings, as authorized by the act, with the administrative features thereof, are, however, as pointed out by the Supreme Court in Texas & Pac. Ry. Co. v. Abilene Cotton Oil Co., 204 U. S. 426, 27 Sup. Ct. 350, 51 L. Ed. 553, 9 Ann. Cas. 1075, maintained, by Congress having made, in the exercise of its legislative power as to the law of evidence, the "findings and order of the Commission" "prima facie evidence of the facts therein stated." In all other respects, a suit under the act shall proceed "like all other civil suits for damages." We cannot give less than full meaning and effect to this language. What may be the facts, or classes of facts, to which this provision of the act applies, must be the important question in this, as in other cases, for the determination of the court. As under the decision in the Abilene Case, the literal language of the act, in allowing a complainant as to all matters, to bring an independent common-law action for damages, cannot be reconciled with the general scope of the act, or with other particular provisions thereof, a suit for damages must in all cases calling for an exercise of the discretion of 'the administrative and rate-regulating body, be founded upon a previous application to and investigation by the Commerce Commission, and instituted with reference to "rights recognized in or to duties imposed by the act." We think, therefore, it clearly follows from the premises:

[2] (1) That the finding of the Commission as to the reasonableness, or otherwise, of the rate charged by the carrier in interstate

commerce, is an administrative function properly and constitutionally delegated by the legislative power to the Commission, and is, if lawfully made, conclusive. If such finding of the Commission is, that a given rate charged by a carrier in interstate commerce is unreasonable, it is as if the unreasonableness of such rate were fixed by the statute. The lawfulness of such finding is subject to judicial inquiry only in the respects above referred to.

[3] (2) The finding by the Commission that a given rate is unreasonable, while pertinent to the issue, in that it establishes a violation of the act, is not decisive of the question of liability for damages under section 8, in such a case as the present, either prima facie or otherwise.

[4] (3) The pertinency and evidential weight and value of the facts, as to which the findings and order are prima facie evidence, are for the determination of the court and jury, as in other civil causes. They may or may not make out a prima facie case for the plaintiff. The importance of the exceptional privilege thus conferred upon the plaintiff, of not being required to prove, in the first instance, the facts found by the Commission, makes it the more necessary that the court should point out to the jury what are and what are not such findings. The imperative command of section 14, that in case, damages are awarded, such report shall include the findings of fact on which the award is made, evidently contemplated a distinct enumeration of such findings by the Commission, with reference to their proposed use in a jury trial, and evidently with this understanding, the original rule of the Commission was made, that

"upon the final submission of the case to the Commission, either party may submit proposed findings of fact for the consideration of the Commission, which findings must embrace only the material facts of the case supposed to be established by the testimony."

No function of a trial judge in such a case could be more exigent than that of pointing out to a jury, in a case where no separate and distinct findings of fact had been made in the report of the Commission, what were properly to be considered such findings. We can only reiterate what was said by us in the Penn Refining Company Case, supra:

"While not expressing the opinion that findings of fact even when mixed with incompetent matter should in all cases be excluded, we hold that, if the same be received, the court should clearly separate and distinguish before the jury the findings of fact from the incompetent matter, and direct that the latter be * * *' disregarded. Unless this course be pursued, the parties are deprived, at least in part, of the benefits and safeguards intended to be secured to them under the constitutional guaranty of trial by jury."

It will be remembered that the only evidence adduced by the plaintiff in support of his claim for damages at the trial, consisted of the four documents to which we have above referred, viz.:

(1) The original report of the Commission, dated June 8, 1911, occupies 50 printed pages of the record. In this report, the Commission find that the complainants have sustained the allegation of unjust discrimination under the second section of the act, and that reparation,

with interest from August 1, 1901, will be awarded on this account. At the close of their report, they find, as follows:

"After careful study of defendant's exhibits relating to tonnage and cost of movement, as well as painstaking analysis of defendant's voluminous exhibits, respecting its past and present financial condition, we are of opinion and so find that defendant's rates for the transportation of coal from the Wyoming region to Perth Amboy * * * are unreasonable, so far as they exceed"

a certain amount. (This finding, as defendant contends, is not a finding that the rates in effect from August 1, 1901, to July 17, 1907, were unreasonable, but that the then present rates, as they existed at the date of the report, were unreasonable.) The opinion is then expressed that reparation should be awarded upon the basis of the rates found in said report to be reasonable.

(2) This report is followed by an order of the same date, commanding the defendant to "desist, on or before the 15th day of August, 1911, and for a period of two years thereafter, from charging or demanding its present rates, and that defendant be required to establish, on or before said date, and maintain for a period of two years thereafter, rates not in excess" of the rates therein specified.

(3) A supplemental report, made by the Commission, May 7, 1912, which states that the original report disposed of all the questions at issue, except the claim for reparation, and that the case was held open for further information regarding that feature. It then states that a further hearing had been held and complainant had presented exhibits showing the total number of tons of each variety of coal shipped and the amount of reparation due on the amount of such shipments. They then say that in their original report they had found that the rates charged complainant for transportation of coal during the period from November 1, 1900, to August 1, 1901, were unjustly discriminatory to an extent named, and that the rates in effect from August 1, 1901, to July 17, 1907, were unreasonable, so far as they exceeded rates established as reasonable by the Commission. This latter reference to the original report is, as claimed by the defendant, inaccurate. They then say that, on the basis of their conclusions in the former report, and upon consideration of the evidence adduced at the hearing upon the question of reparation (*which is nowhere set out*), they find, first, the number of tons of the various sizes of coal shipped by complainant over defendant's road from November 1, 1900, to August 1, 1901, and the amount of the charges thereon, and that complainant has been damaged to the extent of the difference between the amount which he did pay and the amount he would have paid had he had the benefit of the rates applied by defendant to similar shipments of the Lehigh Valley Coal Company. Second, they find the number of tons shipped by plaintiff over defendant's road, from August 1, 1901, to July 7, 1907, and the charges paid thereon, "at the rates found to have been unreasonable"; and that complainant has been damaged to the extent of the difference between the amount which he did pay and the amount he would have paid at the rates found reasonable.

(4) By the supplemental order issued on the same day, to wit, May 7, 1912, and amended June 15, 1912, which we have heretofore quoted

in extenso, the defendant is required to pay, as reparation, to the plaintiff the amount found to have been unjustly discriminatory, and also the amount charged by said defendant over and above the amounts found to be reasonable by the Commission.

As to these documents thus admitted in evidence, it is apparent that the requirement of section 14, that "in case damages are awarded, such report shall include the findings of fact on which the award is made," has not been complied with by any express findings of fact in the supplemental report of May 7, 1912, in which the award of damages against the defendant is made; that such findings of fact, if any, must be looked for in the voluminous pages of the original report filed June 8, 1911, to which reference is made in the supplemental report; and that in the said original report, there are no findings of fact, as such, and they must be gathered, if gathered at all, from a mass of recited evidence, statements, opinions, and conclusions of the Commission, all of which were irrelevant to an award of actual pecuniary damage.

[5] The assignments of error are numerous, but, for the purposes of this case, we may confine our attention to those which are founded upon the admission by the court, over the objection of the defendant, of these four papers, as evidence before the jury, without discrimination on the part of the court as to the evidential value of the opinions, statements, arguments and conclusions contained therein; to those upon the failure of the court to clearly separate and distinguish, for the benefit of the jury, the findings of fact from the incompetent matter contained in such reports, and to direct that the latter be wholly disregarded; and to those founded upon the portions of the charge of the court, in which the jury are in effect told that the award of damages made by the Commission against the defendant, in the orders of reparation pursuant to its report, was, in the absence of controlling testimony on the part of the defendant, binding upon the jury.

The reparation report of May 7, 1912, contains no findings of fact, but merely refers to the original report of June 8, 1911, "as disposing of all the questions at issue, except the claim for reparation," and is silent as to the information and evidence that may have been adduced before it relevant to that claim. The jury would therefore be compelled to examine that voluminous report to discover for themselves whether it contained any findings of fact bearing upon the question as to what actual damage had been suffered by the plaintiff, by reason of the unlawful conduct of the defendant. Various matters may have entered into the determination of the question, whether actual damage had been suffered by the plaintiff. It is quite conceivable that, though, in the performance of its administrative function, the Commission finds a certain rate to be discriminatory or unreasonable and orders such rate to be changed in that regard, no actual pecuniary damage has resulted therefrom to the particular complainant before it. As said by Mr. Commissioner Clements in a public address:

"It often happens, in the attempt at reparation for wrongs accomplished, that the party most injuriously affected has no standing in law to claim reparation, for the reason that he was not the shipper and had no dealing with the carrier—he may have been the producer, consumer, or the dealer, and yet the

price at which he sold or bought may have been so affected that ultimately he had to bear the burden of the increased rate, although it was paid directly, in the first instance, by the shipper."

The injustice must be apparent, of permitting an individual shipper, after procuring, upon his complaint, a reduction of rate for the future, in the interest of the public generally, to secure for himself, by way of reparation, the difference between the new and the old rate, which has already been charged to and paid by the consumer.

The contention of the plaintiff, sanctioned by the court below, carried to its logical conclusion, is, that the finding of an unreasonable rate and the award by the Commission of damages in the precise sum representing the difference between such rate and that declared to be reasonable, constitutes a prima facie case against the defendant, so that the suit brought by the plaintiff is, in effect, a suit to recover a penalty in which the whole burden of proof rests upon the defendant. We are not prepared to agree that this is a suit to recover a specific penalty prescribed by law, but is a suit, as described by the statute, to recover damages, in which the causes for which plaintiff claims damages must be set forth, and to be proceeded in like other civil suits for damages.

The learned counsel for the plaintiff has not pointed out in his brief, nor claimed in his oral argument, that there are any findings of fact upon which the award of damages was made by the Commission, except its conclusion as to the existence of a discriminatory charge between 1900 and 1901, and of an unreasonable charge between 1901 and 1907, and those findings of fact and circumstances tending to establish the same. A careful reading of the 50 pages of this report does not disclose any specific findings of fact bearing on the award of reparation, other than the undisputed tonnage shipped by complainant. The report is occupied entirely with a discussion of the evidence adduced before it, on the charges of discrimination and of unreasonableness.

Granting, however, that these papers, including this long report in which the findings of fact alone are to be looked for, were admissible, as has been already indicated, it was clearly the duty of the court below to point out such portions of the voluminous record as alone should be considered findings of fact, within the meaning of section 16 of the act. We think in this respect the court has failed to assist the jury in the proper conduct of the case, to the detriment of the defendant. It can hardly be denied that such instructions were not only due from the court to the jury, but that without them, these papers, including this voluminous report of the Commission, which in itself constituted a fair sized book, should not have been admitted. The record discloses the fact that, when this report of June 8, 1911, was offered in evidence, it was objected to by the defendant, on the ground that it contained no findings of fact, as required by the statute, or which are material or relevant in a reparation suit. Counsel for plaintiff said in reply:

"There are certain findings of the Commission in this case, if that point is made, which perhaps your honor will have to guard in telling the jury what

part of this report to consider, and I will prepare and submit to your honor such a point for charge, striking out such points as are argumentative or historical, and confining the jury's consideration to such findings of fact as the Commission may make."

Upon further objection by counsel for defendant, on the ground that

"the report contained many statements purporting to be statements of evidence in the hearing before the Interstate Commerce Commission, arguments, opinions, and conclusions, which the statute does not purport to make admissible as prima facie evidence,"

counsel for plaintiff said in repely:

"I would suggest—and this is only a suggestion—that your honor say that you will control the effect of this report by a proper charge to the jury, because there are certain statements of evidence, statements of an historical character, which I think under the cases, the court should control in submitting the case to the jury, and direct their attention to the facts found in the report."

The Court:

"Then your idea is simply to offer the report in evidence, for the purpose of proving that there was an order made, and all relevant material in support of that evidence?"

Counsel for plaintiff:

"Yes, sir."

The Court:

"The court will, of course, indicate to the jury what of the report is relevant."

After this very significant colloquy, the report was admitted in evidence, and afterwards, at the close of the testimony, the record states that counsel for the defendant "read to the jury what he stated to be material portions of said exhibits." It is not stated, however, in the record, what portions were so read; and we look in vain for any directions by the court to the jury in regard to this important matter.

The following extracts from the charge indicate the theory upon which the court below submitted the case to the jury, and the attitude of the court towards these reports and orders of the Commission:

"It is objected here, gentlemen of the jury, that these reports made by the Commission, upon which this suit is based, are not in accordance with the requirements of this act and, therefore, you should find for the defendant. But I instruct you, gentlemen of the jury, that they are, in the judgment of the court, in accordance with the requirements of this section. They state the conclusions as required by the act, and they state the findings of fact upon which the award is based, and they make that award in the sums that I have mentioned, upon sufficient findings of fact to sustain this suit."

\*      \*      \*      \*      \*      \*      \*      \*      \*      \*

"In the presentation of this claim to the court and the jury, the act of Congress *gives the report* a certain character as evidence. Congress, while it authorizes the Interstate Commerce Commission to investigate these alleged grievances and to ascertain whether a shipper has been injured and in what amount, and to award what, in their judgment, is a proper amount, yet requires that, if it is not paid by the defendant, the defendant shall have its

day in court before a jury, for the purpose of ascertaining whether or not it is liable, as found by the Interstate Commerce Commission, in accordance with the forms of procedure directed by the Constitution. But in that proceeding, the suit is *on the report* of the finding of the Interstate Commerce Commission, and their finding is made *prima facie* evidence of the correctness *of the amount the plaintiff is entitled to recover*, and, in a suit on an award of the Interstate Commerce Commission, the plaintiff, when it comes into court, must show that there was such a complaint made before the Interstate Commerce Commission, must show what the Interstate Commerce Commission did by way of its conclusion and award, and that it has not been paid, *and that makes its prima facie* case of its right to claim." (The italics are ours.)

There is no attempt here, or elsewhere in the charge, to separate from the mass of statements in the report what might be considered findings of fact, or to instruct the jury that the statute, in making such findings prima facie evidence of the facts stated, leaves the evidential value of such facts to the jury. On the contrary, as will be seen in the above extracts from the charge, the court gave the jury to understand that the report and findings of the Commission as to discrimination and unreasonableness, and the award of damages made thereon, were prima facie evidence of the *plaintiff's case* and of the *liability* of the defendant, and conclusive upon the defendant, unless he could rebut the same. In this, we think the court was clearly in error. The statute, in conformity with the constitutional requirement, has provided that the defendant can only be mulcted in damages by the verdict of a jury rendered in a suit, as at common law, proceeded in "in all respects like other civil suits for damages." The statute says that such facts as are stated in the findings or order of the Commission need not be proved in the suit for damages, but that such findings or order shall be prima facie evidence of the same, for whatever they may be worth. In other words, the statute makes the finding or order prima facie evidence of certain facts, but it does not make, or attempt to make, such facts prima facie evidence of anything.

Since the hearing and determination of this case, as also of Lehigh Valley Railroad Co. v. J. Mitchell Clark et al., 207 Fed. 717, 125 C. C. A. 235, the Supreme Court has promulgated an opinion and decision in Pennsylvania Railroad Co. v. International Coal Mining Co., 230 U. S. 184, 33 Sup. Ct. 893, 57 L. Ed. 1446. This decision bears directly upon some of the fundamental questions involved in the case now under consideration, as it did in those involved in the Clark Case, above referred to. On the vital point, whether in this suit, "like other civil suits for damages," actual damage must be proved, we again quote the language of Mr. Justice Lamar:

"There were many provisions of the statute for imprisonment and fines. On the civil side, the act provided for compensation—not punishment. Though the act had been held to be in many respects highly penal, yet there was no fixed measure of damage in favor of the plaintiff. But, as said in Parsons v. Railway, 167 U. S. 460 [17 Sup. Ct. 892, 42 L. Ed. 231], construing this section (8), 'before any party can recover under the act, he must show, not merely the wrong of the carrier, but that that wrong has in fact operated to his injury.' Congress had not then and has not since given any indication of an intent that persons not injured might, nevertheless, recover what, though called damages, would really be a penalty, in addition to the penalty payable to the government."

After referring to quite a number of cases relied upon by plaintiff, Mr. Justice Lamar says they

"do not support the proposition, that damages can be recovered without proof of what pecuniary loss had been suffered as a result of the discrimination."

It hardly needs to be pointed out, as we did in the Clark Case, that the ratio decidendi of the Supreme Court does not differ from that applicable to the present case. The Supreme Court also distinctly decides that, in the absence of proof of actual damage to that extent, the amount of the rebate charged and proved to have been made by defendant, cannot be recovered as damages, and that it can never be made the measure of the damage to which plaintiff is entitled. No more in this case can the difference between what is found by the Commission to be the unreasonable tariff rate and that fixed as a reasonable one, be made the measure of the damage that the plaintiff has suffered. As pecuniary damages are neither alleged in the pleadings nor proved in the trial, the plaintiff made out no case upon which recovery of damages could be had.

For the reasons above stated, we think the judgment below should be reversed, with directions for a venire de novo.

There was a second complaint made to the Interstate Commerce Commission by defendant (Meeker), in his own name, dated April 13, 1910, pending the proceeding in his first complaint filed July 17, 1907. In the former complaint, as we have seen, the Commission were dealing with the question of the unreasonableness of the rates on anthracite coal from the Wyoming region to Perth Amboy, between August 1, 1901, and July 17, 1907, whereas the second complaint dealt with the same charges or rates between July 17, 1907, the date of the filing of the first complaint, and April 13, 1910. The supplemental report of the Commission, dated May 7, 1912, was a blanket report and covered both complaints. As to the later case, the report, after dealing with the former, said:

"With the exception of the reparation features, the issues involved in No. 3235 have been passed upon by the Commission in No. 1180. The latter case covered the period from November 1, 1900, to July 17, 1907, while the instant case is designed to secure reparation upon shipments which move between July 17, 1907, and April 13, 1910. The petition in the present case, therefore, resolves itself into a prayer for reparation on shipments moving subsequent to the period covered by the original report, on basis of the conclusions announced in that report. * * * The former case was filed with the Commission within one year from the passage of the law of June 29, 1906, and consequently was not limited to causes of action that accrued within two years prior to the filing of the complaint. The present proceeding, however, was instituted more than one year subsequent to the passage of that law, and is therefore subject to the two year limitation of the statute. Complainant's prayer for reparation on shipments moving more than two years prior to the filing of the complaint in this case, must be denied.

"On basis of our decision in No. 1180, upon consideration of the evidence submitted at the hearing of the present case regarding the amount of reparation due complainant,"

the Commission find that the rates exacted by defendant during the two years prior to the filing of his last complaint, were unreasonable to the same extent as found in the report as to the former period from

August 1, 1901, to July 17, 1907. The report in this latter case does not purport to include the statements and findings of the original report, or of the supplemental report in regard to the former case. It merely makes a finding of unreasonableness on the basis of their decision in No. 1180. How far it is competent for the Commission to proceed upon findings and evidence in a former and distinct case, by merely referring to the same, need not now be decided. The suits in the court below, as to both cases, were tried and submitted to the jury together, upon the same instructions as to the prima facie character of the report and the award. Therefore, what has been heretofore said in regard to the former case, is applicable to the latter, and need not be repeated.

The judgment, therefore, in the second case must also be reversed, with directions for a venire de novo.

[6] The second paragraph of section 16 of the act concludes as follows:

"All complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after, and a petition for the enforcement of an order for the payment of money shall be filed in the Circuit Court [or state court] within one year from the date of the order, and not after: Provided, that claims accrued prior to the passage of this act may be presented within one year."

The manifest intention of Congress here, as in all statutes of limitations, was to prevent the accumulation of claims until they were stale, and to compel those who felt themselves aggrieved by the rates exacted by interstate carriers, to use due diligence in availing themselves of the remedial provisions of the act. It surely was not the intent of the amendment passed June 29, 1906, that claims prior to that date which had accrued as far back as 1887, might be presented to the Commission, provided only they were so presented within one year after the passage of the amending act of 1906. The evident purpose of Congress was to cut off all claims for reparation more than two years old. In order, however, to prevent those whose accrued claims were two years old at the time of the passage of the amending act, from being taken by surprise and put at a disadvantage, as compared with those whose claims had accrued less than two years before the passage of the act, or with those whose claims having accrued after the passage of the act had full notice of the time within which they must be prosecuted, Congress gave a year's time within which claims accruing before the passage of the act might be presented to the Commission. It would be a harsh construction, however, doing violence to what seems to us the evident intent of Congress, to say that, in giving this time, it did not mean to preserve the two years' limitation, both as to claims before and after the act. We conclude, therefore, that the Commission in this case had no jurisdiction to entertain a claim of the shipper accruing prior to July 17, 1905.

## On Rehearing.

The able and interesting argument at the rehearing in this case has challenged the careful reconsideration by the court of the grounds

upon which were based the conclusions announced in their original opinion.

We had already, at the same term, discussed very fully the Interstate Commerce Act of 1887, with the amendments of 1889 and 1906, relevant to the questions now presented, in the case of the Lehigh Valley Railroad Co. v. J. Mitchell Clark et al., 207 Fed. 717, 125 C. C. A. 235. We therefore considered it unnecessary to repeat that discussion and analysis of the act and its amendments in the opinion filed in the present case, though we applied the principles of that decision thereto.

With this reference to our opinion in the Clark Case, we confine ourselves to what seem to us the crucial questions raised by the petition for, and argument at, the rehearing.

Premising what we have before said, that the provisions of the act, granting a right of action to shippers for damages incurred in consequence of violations of the act by the interstate carrier, while important, are incidental and not primary, in the scheme of the act for the control and regulation of the actual operation of interstate commerce, in the general interests of the public, let us again consider the nature and scope of such right, as disclosed by the language and general purposes of the statute creating it.

The learned counsel for the defendants in error, in his argument at the rehearing, contended with much insistence that the act, in denouncing unreasonable rates and creating·a liability to the shipper therefor, was merely declaratory of the common law, and in support of this proposition,. cites the following language in the opinion of Mr. Justice White, in the Abilene Cotton Oil Case, 204 U. S. 426, 436, 27 Sup. Ct. 350, 353 (51 L. Ed. 553, 9 Ann. Cas. 1075):

"Without going into detail, it may not be doubted that at common law, where a carrier refused to receive goods offered for carriage * * * except upon the payment of an unreasonable sum, the shipper had a right of action in damages. It is also beyond controversy that when a carrier accepted goods without payment of the cost of carriage or an agreement as to the price to be paid, and made an unreasonable exaction as a condition of the delivery of the goods, an action could be maintained to recover the excess over a reasonable charge. And it may further be conceded that it is now settled that even where, on the. receipt of goods by a carrier, an exorbitant charge is stated, and the same is coercively exacted, either in advance or at the completion of the service, an action may be maintained to recover the overcharge."

From this it was argued that (we quote from defendant in error's supplemental brief):

(1) "The measure of damage was clearly the difference between the unreasonable rate paid and the reasonable rate. (2) That all that the shipper had. to establish, consequently, was the amount of the charges which he had paid, and what the reasonable charge would have been. (3) Having established these facts, the shipper was entitled, *as a matter of law*, to recover the difference between the two rates—that is the overcharge."

These propositions constitute the gravamen of defendant in error's whole argument.

In the case quoted from, the Supreme Court was dealing with a judgment in a state court, where suit had been brought to recover damages from the defendant company by reason of the exaction of an alleged unjust and. unreasonable rate, which exceeded in the aggregate,

by the sum sued for, an alleged just and reasonable charge. There had been no application to, or finding by, the Interstate Commerce Commission, in regard to the unreasonableness of the rate. Mr. Justice White conceded these common-law rights of action, but proceeded to show that they were repugnant to the provisions of the Interstate Commerce Act, which was intended "to afford an effective and comprehensive means for redressing wrongs resulting from violations of the act," and that a shipper cannot maintain an action at common law for excessive and unreasonable freight rates exacted on interstate shipments, where rates charged had been duly fixed by the carrier according to the act, and not found to be unreasonable by the commission. We think this whole opinion tends to emphasize the distinction between the common law rights of action referred to, and the right of action created and defined by the act. A situation where the rates paid were the rates fixed by the act, as the only legal rates that could be demanded or paid, even though those rates are declared afterward by the Commission, in the performance of its administrative function, to be unreasonable, differs essentially from a situation where an *illegal* rate is, in the first instance, coerced or *extorted* by the carrier. The tariff rate paid by the shipper was the legal rate, any departure from which is made by the statute a misdemeanor and punishable by fine. There is consequently no "overcharge" to be recovered as such, as in the cases cited at common law, and no coercion except that of the law. It is obvious that, even though the statute were silent as to the measure of damage applicable to the first situation, that measure could not justly be the same as in the second. That section 22 does not help the argument of the defendant in error in this respect, is shown by Mr. Justice White, when he further says:

"It is insisted that, however cogent may be the views previously stated, they should not control, because of the following provision contained in section 22 of the Act to Regulate Commerce, viz., 'Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies.' This clause, however, cannot in reason be construed as continuing in shippers a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act."

We repeat that this decision of the Supreme Court so far from sustaining the contention of the defendant in error, that the Interstate Commerce Act was merely declaratory of the common law, and that the common law measure of damage was applicable to the liability created by section 8 of the act, clearly distinguishes the liability at common law, as it existed in the cases cited by Mr. Justice White, from that created by the act for every violation of its provisions. We turn to the pertinent provisions of the act.

After requiring that all charges by common carriers for transportation shall be just and reasonable, and inhibiting unjust and unreasonable charges for such service, prohibiting rebates and unreasonable preferences, and declaring the same to be unlawful, the statute, in section 8 thereof, *and there alone,* creates the liability with which we are here concerned. We again quote from that section:

"That in case any common carrier subject to the provisions of this act shall do * * * any act, matter, or thing in this act prohibited or declared to be unlawful, or shall omit to do any act * * * in this act required to be done, such common carrier *shall be liable to the person or persons injured thereby for the full amount of damages sustained in consequence of any such violation of the provisions of this act.*" (The italics are ours.)

The learned counsel for the defendant in error seems to argue that this statute creates a *general* liability, independent of any relativity, limitation or qualification, as soon as a violation of the act is shown. That this is not so, is apparent. It is not a *general* liability that is imposed by the act, but a particular liability to the person injured "for the full amount of damages sustained in consequence of any violation of the provisions of the act." The liability thus defined is the only civil liability anywhere imposed, and no other or different civil liability can attach itself to *any* violation of the act. The liability thus imposed being the same for all violations of the law, without exception, that liability, as defined by the statute, is to the "person or persons injured for the full amount of damages sustained in consequence of *any* such violation of the provisions of this act." We cannot avoid the plain and exigent meaning of this language. It is impossible, in view of it, to attribute to Congress an intention to apply it to only a portion of the offenses against the act.

The logic of the situation, as recognized by the decisions of the Supreme Court in the Abilene and other recent cases, would seem to be, that a civil suit for damages may be brought under sections 8 and 9 in the District Court of the United States, for any violation of the act; that, if the violation be a simple disobedience of a specific requirement of the statute, whether of omission or commission—such, for instance, as giving a rebate—nothing more is required than to prove that specific act, and no finding of the Commission is necessary to the jurisdiction of the court; but, where the illegality of the act charged depends upon whether it be reasonable or unreasonable, the option given by section 9 cannot be literally interpreted, as the determination of this issue calls for an exercise of the discretion of the administrative body. When that administrative function has been performed, and the rate complained of has been found to be unreasonable or unjust, such finding is conclusive, whether it relate to past or present rates or practices. As said by Mr. Justice Lamar, it is as if the reasonable rate or practice was established in the statute itself. It would then only be necessary to prove in court this finding of the Commission, that such a specific act or practice was unreasonable, and therefore unlawful under the act, just as it was only necessary, without any finding of the Commission to that effect, to show that a specific rebate has been given that was declared unlawful by the act itself. The further procedure in the case supposed, as indicated by the act, must be in all respects "like other civil suits for damages," except that the plaintiff may, in proving his pecuniary loss or damage, in consequence of a violation of the act by the defendant, use the facts stated in any finding or order of the Commission in support of his claim, without further proof of such facts, supplementing the same by other evidence as, in his judgment, the exigence of the case may require.

Referring to a contention in the International Coal Company Case, that a suit for damages, occasioned by rebating, could not be maintained without preliminary action by the Commission, Mr. Justice Lamar, in the recent Mitchell Case, said:

"This contention was overruled, and it was held that, for doing an act prohibited by the statute, the injured party might sue the carrier without previous action by the Commission, because the courts could apply the law prohibiting a departure from the tariff to the facts of the case. But where the suit is based upon unreasonable charges or unreasonable practices there is no law fixing what is unreasonable and therefore prohibited. In such cases the whole scope of the statute shows that it was intended that the Commission and not the courts should pass upon that administrative question. When such order is made it is as though the law for that particular practice had been fixed, and the courts could then apply that order, not to one case, but to every case—thereby giving every shipper equal rights and preserving uniformity of practice. Section 9 gives the plaintiff the option of going before the Commission or the courts for damages occasioned by a violation of the statutes. But since the Commission is charged with the duty of determining whether the practice was so unreasonable as to be a violation of the law, the plaintiff must, as a condition to his right to succeed, produce an order from the Commission that the practice or the rate was thus unreasonable and therefore illegal and prohibited."

From this illuminating view of the requisite procedure under the act, harmonizing as it does its different provisions and "giving every shipper equal rights and preserving uniformity of practice," it would seem that all other shippers than the complainant might bring their several actions in the District Court, "for the full amount of damages sustained in consequence of" the same violation of the act, without any further finding by the Commission. It having once been established what particular conduct or practice of the carrier was illegal, it would only be incumbent on a plaintiff to show the damage, if any, sustained thereby. No award of reparation, therefore, would be necessary in such cases to the jurisdiction of the court, the suits being cognizable under sections 8 and 9, as in the case of suits for damages occasioned by rebates or other specific violations of the act.

From this it seems irresistibly to follow, that all shippers prosecuting suits for damages "sustained in consequence of any violation of the provisions of the act," are on the same footing, whether the violation be a specific act made illegal by the statute, or one in which the illegality of the act depends upon the finding of fact by the Commission, that the act or practice complained of is unreasonable or unjust. In like manner it follows that the measure of damages sustained by a shipper in consequence of any violation of the act, must be the same in all cases. We find no authority in the act itself, or in the decisions of the Supreme Court, for applying a different measure of damage in the case of any violation of the act, than that established by the eighth section, viz., "the full amount of damages sustained" by reason thereof. To hold that, in one case actual damage must be proved, and in the other not, introduces a confusion in the administration of the law, for which the only justification must be the express and mandatory requirement of the statute, or the express and controlling decision of the Supreme Court. The measure of the statute is thus stated by the Supreme Court in the International Coal Mining Case:

"The statute gives a right of action for *damages* to the *injured* party, and by the use of these legal terms clearly indicated that the damages recoverable were those known to the law and intended as compensation for the injury sustained. It is elementary that in a suit at law both the fact and the amount of damage must be proved. And although the plaintiff insists that in all cases like this the fact and amount of the pecuniary loss is matter of law, yet this contention is not sustained by the language of the act, nor is it well founded in actual experience, as will appear by considering several usual and everyday instances suggested by testimony in this record."

This statement of the Supreme Court is general, and is applicable to any and all cases where damages are sought by one claiming to have been injured by a violation of the act. It would seem to dispose of the contention of the defendants in error, referred to above and approved by the court below, that "the shipper was entitled as matter of law to recover the difference between the two rates," that is, the tariff rate charged to the shipper, and the lower rate found to be reasonable by the Commission. Herein is the essential vice of defendant in error's argument, that the fact and amount of pecuniary loss in a case like the present, is *matter of law,* and *not of fact* to be determined by the jury. It does not help the matter that the defendants in error argue that the rate charged having been conclusively found by the Commission as unreasonable, the award of the difference between that rate and the rate found to be reasonable is only prima facie evidence of the liability of defendant for the amount so awarded. The act makes nothing prima facie evidence of the *liability* created by section 8. The prima facies mentioned in section 16 is attached to the *facts* stated in the finding and order of the Commission, which facts may or may not be sufficient to establish that liability.

Section 16 of the original act has been so amended as to meet the objection that was made soon after its enactment, that in reparation cases, the order of the Commission could not be enforced by a summary proceeding in a court of equity, as administrative orders were enforced, and that the liability for the damages actually sustained by a shipper, by reason of a violation of the law, could, conformably to the seventh amendment of the Constitution, only be enforced, as are other liabilities of that kind, by a suit at common law. This recognition by Congress of the necessity of conforming to the requirements of the seventh amendment, is, of course, inconsistent with any interpretation of the ninth section, from which it could be inferred that a person claiming to be damaged by any common carrier, might "elect" to pursue his claim for damages before the commission, as his final and efficient remedy, and procure an award for the payment of the same, enforceable as such in a court of law, as an administrative order is enforceable in a court of equity. The successive amendments, by which section 16 was brought into its present shape, attest the earnest purpose of Congress to meet the situation. Suits to enforce the liability created by section 8 were made available to the person injured in all cases, not only where the violation of the statute was an act or practice denounced as illegal by the law itself, but also where such act or practice was only made illegal by the finding of the Commission.

Sections 13 and 15 having provided that the Commission was au-

thorized, either upon complaint or upon its own initiative, to declare, upon investigation, any rates or practices unjust or unreasonable, section 16 provided for a case where, after the complaint and investigation, an award, or, as it was called in the original act, a recommendation, of damages was made by the Commission. If not complied with by the defendant within a time specified, the complainant was authorized to file in a Circuit (District) Court of the United States, or in any state court of general jurisdiction, a petition setting forth briefly the causes for which he claims damages and the order of the Commission in the premises. "Such suit in the Circuit Court of the United States shall proceed in all respects like other civil suits for damages." This is in effect authorizing in the special case described a common-law suit for damages, as contemplated by sections 8 and 9, in all cases where damages are claimed consequent upon a violation of the law.

It is true, that the law makes an exception to the ordinary rule of evidence in such cases, by providing that facts stated in the findings or order of the Commission need not again be proved by the plaintiff, the finding and order being made prima facie evidence of such facts. Such facts may or may not be relevant to the question of the liability for, or amount of, damages claimed. Their evidential value in this respect is for the court and jury trying the case. This prima facies of the facts found is an advantage of considerable moment to the plaintiff. It is an expressed exception to the ordinary rule of evidence, and should not be extended by implication. It must be confined to the precise meaning of the language of its enactment. If the intent of the legislative mind had been to go further and make, not only the findings of fact and order prima facie evidence of the facts stated, but also the conclusions of the Commission *on* facts, prima facie evidence of the *liability* of the defendant for the amount of damages stated in the award, such intent should and would have found expression in the act. We are not to impute to Congress such an intention so violative of the fundamental rights of the parties to a suit at common law, and of the express guaranty of the Constitution in that regard. If more were wanted, we might refer to the language of section 14, which emphasizes the distinction between the "conclusions" of the Commission and "the findings of fact on which the award is made."

The distinction between reparation and non-reparation cases, so anxiously made by Congress, in order to conform to the spirit of the seventh amendment, would be practically nullified, if, in prosecuting a suit for damages actually sustained by reason of a violation of the law, the liability for such damages, and the amount thereof, as found by the Commission, must be conceded in the first instance. Is a defendant to be called upon, practically to prove a negative, and show that the plaintiff was not damaged, or that the amount claimed was less than that stated by the Commission? These facts, or the facts upon which they depend, are all peculiarly within the knowledge of the plaintiff, and it is fundamental that neither party to a suit should be required to prove or disprove what is peculiarly within the knowledge of the opposite party.

Unwarranted as this contention may be, that the findings and order of the Commission are prima facie evidence, not only of the facts therein stated, but of the conclusions of the Commission in regard to the very subject-matter in litigation, it is also still more unjust in these cases, because if sustained, it practically and substantially makes the award of the Commission, not only prima facie, but conclusive evidence of the plaintiff's case.

The theory of the case, as presented by the defendants in error in their pleadings, as well as at the trial, and adopted by the court below, is that the suit was brought upon the award, *qua* award, instead of having been brought "to enforce a cause of action given by this section (section 8) to any person injured." It was brought "to recover what, though called damages, would really be a penalty." In accordance with this theory plaintiff's contention logically follows that, when the Commission finds that the rates charged were unreasonable, and what the reasonable charge should have been, the establishment of these facts entitles the shipper, as matter of law, to recover the difference between the two rates. In the present case, we have the unquestioned finding of the Commission, that the rates charged were unreasonable, and that a certain lower rate was reasonable, and the difference between the two was expressly and avowedly awarded as damages to the plaintiff. Defendants in error contend and the court below states that the so-called facts, when shown at the trial, constitute a prima facie case for the plaintiff. If, however, the difference between the two rates is, as matter of law, the measure of damage sustained by the plaintiff, it is not only prima facie but conclusive evidence upon court and jury of the injury of the plaintiff and of the amount of damage to which he is entitled. Grant the premise, that plaintiff is entitled to recover, as matter of law, the difference between a reasonable and unreasonable rate found by the Commission, and that the suit is for the recovery of that difference, as awarded by the Commission, the logical conclusion is, as stated by the defendants in error and the court below. This "logical conclusion," however, is a reductio ad absurdum, and therefore shows the falsity of the premises upon which it is founded.

Congress admittedly, by its successive amendments to the act of 1887, sought to conform to the requirement of the seventh amendment, by providing that, where the matters involved were founded upon a controversy requiring a trial by jury, such a trial should be accorded. Can it be doubted that the parties, therefore, are entitled to a real trial by jury, so conducted as to accord to them in full measure the enjoyment of their constitutional right? If so, how wide of the truth is the contention that this right has been enjoyed by the defendant in the present suit?

We have already quoted one form in which the theory of the case is stated by the plaintiff below. In another place in his supplemental brief, it is thus stated:

"At common law, a shipper who had been charged unreasonable rates could recover the overcharge; and, under the statute, as soon as the Commission

had determined that there had been an overcharge, the shipper *could recover in the same way*, although, of course on the trial the carrier was at liberty to disprove, if it could, the fact of the overcharge established prima facie by the finding and order of the Commission."

The "overcharge," as has been before stated in the same brief, can be nothing else than the difference between the reasonable and the unreasonable or tariff rate. How can the carrier be said to be "at liberty" to disprove that arithmetical fact? This difference, according to the theory of the court below,—though its payment has neither been "extorted" or "coerced," except by the law,—is the damage to which the plaintiff is entitled as a matter of law. Though stated to be prima facie, it is really, according to that theory, conclusive as to the injury of the plaintiff and the amount of his damage.

We need only for a moment compare this theory of a suit for damages with that which is established by the act itself. The sixteenth section nowhere says that the report, findings or order of the Commission are prima facie evidence of the liability of the defendant, or of the amount of such liability. It only says, and we must again recur to its exact language, that the findings and order of the Commission "shall be prima facie evidence of the facts therein stated." But clearly, such facts are not made prima facie evidence of anything. Their evidential value is for the court and jury to determine. They may or may not be sufficient to make a prima facie case, or they may, in the opinion of the court or jury, be of any other greater or less degree of probative force. These facts can be no other than those referred to in the fourteenth section, where it provides that, after an investigation, the committee shall make a report, "which shall state the conclusions of the Commission, together with its decision, order, or requirement in the premises; *and in case damages are awarded, such report shall include the findings of fact on which the award is made."*

In view of this, it would seem almost an abuse of language to say that the "facts," of which the findings and order of the Commission are prima facie evidence, include the conclusions arrived at by the Commission, as to the injury of the plaintiff and the amount of damages sustained. The measure of damage is not fixed by the statute to be the difference between a reasonable and an unreasonable rate, as a matter of law or otherwise. On the contrary, the eighth section declares that the "common carrier" in this case, as in all others, "shall be liable to the person or persons injured for the full amount of damages sustained in consequence of *any* violation of the provisions of the act." What those damages may be, is a question of fact to be determined by the jury, and not a question of law. That is distinctly decided by the Supreme Court in the International Coal Mining Case. This is the measure of damage established by the act itself, and must be conformed to in a case like the present. The language of the eighth section makes the measure of damage therein prescribed applicable to *every* violation of the act. Nor has the Supreme Court in any case decided otherwise. Its reasoning as to the measure of damages established by the eighth section, is also applicable to *every* violation of the

act,—to one that depends for its illegality upon a finding of the Commission, as well as to one where such finding is unnecessary. The argument to the contrary is largely technical, and tends to make a mockery of the right to a jury trial and to defeat the just purposes of the act in that respect.

We conclude by quoting again the language of the Supreme Court in the International Coal Company Case, after referring to what was said by that court in Parsons v. Railway:

"Congress had not then and has not since given any indication of an intent that persons not injured might, nevertheless, recover what though called damages would really be a penalty, in addition to the penalty payable to the government."

Our opinion, therefore, already filed, with certain modifications in the text thereof, will stand as the opinion of the court in this regard.

For obvious reasons, we have made no distinction between the count for the recovery of damages for discriminatory rates and that for unreasonable rates, and therefore have not referred to the former in the plaintiff's petition, complaining of discriminations alleged to have been practiced by the plaintiff in error during the period from November, 1900, to August, 1901, although the counsel for defendants in error says in his brief at the rehearing:

"There is a wide distinction between the two causes of action."

But it is argued that, inasmuch as, upon application of the plaintiff, a discrimination was found by the Commission to have been practiced by the defendant, and reparation therefor awarded, in the amount of the difference between the tariff rate charged and the low rate collected from other shippers, that award was prima facie evidence of the damage sustained by the plaintiff. So that, according to this argument, even in rebate cases there is a class, consisting of those in which the Commission has intervened and made an award, to which the measure of damage established by section 8 for *every* violation of the law, does not apply.

Defendants in error also urge that this court was in error in its interpretation of the second paragraph of section 16 of the act, providing that

"all complaints for the recovery of damages shall be filed with the Commission within two years from the time the cause of action accrues, and not after, and a petition for the enforcement of an order for the payment of money shall be filed in the Circuit Court [or state court] within one year from the date of the order, and not after: Provided, that claims accrued prior to the passage of this act may be presented within one year."

We have carefully reconsidered the opinion we have already expressed as to this provision of the sixteenth section of the act, in the light of the able argument of counsel for defendants in error. We are not convinced, however, that we have misconceived the true meaning and spirit of that provision, and therefore adhere to our judgment, that the court below was in error in instructing the jury that

"there is no statute of limitation which bars the recovery of the plaintiff for either of the amounts presented in this suit."

The assignments of error in this respect, therefore, must be sustained, and for these reasons and those heretofore stated, the judgment below must be reversed, and a venire de novo awarded.